**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| Brett Randall Walen, | Civ. No. 10-2022 (DWF/JJK) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Warden John King, | |
| Respondent. | |

---

Kyle D. White, Esq., Attorney at Law, counsel for Petitioner.

G. Paul Beaumaster, Esq., and Meredith A. Erickson, Esq., Rice County Attorneys; and Kimberly R. Parker, Esq., and Matthew Frank, Esq., Minnesota Attorney General's Office, counsel for Respondent.

---

JEFFREY J. KEYES, United States Magistrate Judge

## INTRODUCTION

This matter is before the Court on Petitioner Brett Randall Walen's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. No. 1) ("Pet."), Petitioner's Motion to Compel Discovery (Doc. No. 3), and Respondent's Motion to Dismiss Petition for Writ of Habeas Corpus (Doc. No. 8). The case has been referred to this Court for Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, this Court recommends that Respondent's motion to dismiss be granted, Petitioner's

Habeas Corpus Petition and motion to compel be denied, and this action be dismissed with prejudice.

## BACKGROUND

Seventeen years ago, on August 27, 1993, while stopped on a Rice County road early in the morning, Keith Wallace was shot in the back of the head. On May 23, 1995, Petitioner was convicted of first-degree murder of Wallace and sentenced to life imprisonment; he is now incarcerated at the Minnesota state prison in Stillwater.

A lengthy police investigation during the year after the murder led law-enforcement authorities to the following evidence that was presented to the Rice County jury at Petitioner's trial:

- Petitioner was having a romantic relationship with the victim's wife, Michelle Wallace, who was in the car at the time of the murder.

- Ten days before the shooting, Petitioner purchased a .38 caliber revolver and .38 caliber ammunition, and he sold the gun just a few hours after the shooting.

- Petitioner was unable to say with any certainty where he was at the time of the murder.

- Michelle Wallace initially failed to tell the police about her relationship with Petitioner.

2

- Phone records showed that there were hours of phone conversations between Michelle Wallace and Petitioner just prior to the shooting.
- Michelle Wallace was the sole beneficiary on her husband's $120,000 life-insurance policy.
- After the shooting, but before Petitioner was arrested and charged with Keith Wallace's murder, Michelle Wallace and Petitioner were engaged to be married and began shopping for a new house.

At Petitioner's trial, the State called two expert witnesses who testified about comparisons done between Petitioner's gun and several bullet fragments taken from the victim's head. A firearms examiner from the Minnesota Bureau of Criminal Apprehension ("BCA") testified that he had examined the bullet fragments and Petitioner's gun and his results were "inconclusive," meaning that he was not able to say with certainty whether Petitioner's gun had fired the bullet fragments. *Walen v. State*, 777 N.W.2d 213, 215 (Minn. 2010). But a firearms examiner with the federal Bureau of Alcohol, Tobacco and Firearms ("ATF") was certain. He testified that he also examined the bullet fragments and Petitioner's gun, and that the two largest bullet fragments from the victim's skull were definitely fired from Petitioner's gun to the exclusion of all other guns. *Id.*

On August 21, 1995, following his conviction and sentencing, Petitioner filed a direct appeal with the Minnesota Supreme Court claiming that the evidence adduced at trial was insufficient as a matter of law to sustain his conviction, and that the trial court abused its discretion by admitting autopsy photographs and a crime-scene videotape, by allowing a handgun-firing demonstration, and by denying Petitioner's motion for a change of venue. Petitioner also filed a motion in the district court for post-conviction relief on two additional grounds—denial of his right to testify and ineffective assistance of counsel—and moved the Minnesota Supreme Court to stay the direct appeal. After the Minnesota Supreme Court stayed the direct appeal, the trial court denied Petitioner's request for post-conviction relief, and Petitioner appealed.

The Minnesota Supreme Court then consolidated Petitioner's appeal from the denial of post-conviction relief with the direct appeal, and in 1997, affirmed the conviction. *State v. Walen*, 563 N.W.2d 742, 745 (Minn. 1997). It concluded that the state district court did not abuse its discretion by denying Petitioner's motion for a change of venue, by admitting autopsy photographs and a crime-scene videotape, or by allowing a handgun-firing demonstration. The court also held that there was sufficient evidence for a reasonable jury to conclude beyond a reasonable doubt that Petitioner shot and killed Keith Wallace, and that the post-conviction court did not err in refusing to find that defense counsel had

denied Petitioner's right to testify or in finding that Petitioner had waived his attorney-client privilege by claiming ineffective assistance of counsel.

In July 2007, ten years after the Minnesota Supreme Court affirmed the conviction, Petitioner filed a second petition for post-conviction relief in the state district court. He based this second petition on the fact that he obtained a three-page report dated October 27, 1993, prepared by a BCA firearms examiner that stated that the BCA firearms examiner "failed to make an identification" between the bullet fragments found in the victim's head and Petitioner's gun. Petitioner does not say exactly when he obtained this BCA report, except that it was after 1997 when he retained new counsel who requested the records in his case from the BCA. He based his second petition for post-conviction relief on the theory that the State withheld the BCA report before trial and that the report was exculpatory, thus constituting a violation of constitutional dimension under *Brady v. Maryland*. He also claimed that the BCA report represented newly discovered, exculpatory evidence and entitled him to a new trial. The trial court denied this second petition for post-conviction relief and, in January 2010, the Minnesota Supreme Court affirmed, holding that the post-conviction court did not abuse its discretion in denying Petitioner's second petition for post-conviction relief without an evidentiary hearing. The Minnesota Supreme Court concluded that Petitioner was not entitled to a new trial because the BCA report was not material under

either a *Brady* or a newly-discovered-evidence analysis. *Walen v. State*, 777 N.W.2d 213, 214 (Minn. 2010).

Now, in his federal habeas Petition, Petitioner argues that the Minnesota Supreme Court erred in denying his claim that he was entitled to a new trial as a result of the newly-discovered BCA report and the *Brady* violation. He claims that, at the very least, he was entitled to a post-conviction evidentiary hearing as a result of the newly-discovered-evidence. Petitioner has also moved this Court for an "Order to Compel Discovery" of "copies of all forensic testing conducted by the Federal Bureau of Alcohol, Tobacco and Firearms, and all other forensic laboratories contacted by the Rice County Attorney's Office" and has requested that the "subject firearm in this case, and bullet fragments previously tested by both the ATF and BCA be made available for independent testing." (Doc. No. 3.)

## DISCUSSION

### I. Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), prescribes the standards that govern this Court's substantive review of Petitioner's habeas corpus claims. The relevant portion of AEDPA, 28 U.S.C. § 2254(d), provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362 (2000), the United States Supreme Court discussed the meaning of this statute, and how it should be applied by the federal district courts. The Supreme Court recognized that –

> a state-court decision can be 'contrary to' this Court's clearly established precedent in two ways. First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.

*Id.* at 405.

> Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* at 413.

> The Court also explained that –
>
> A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was *objectively unreasonable* . . . . [A]

7

> federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 411 (emphasis added). As the Eighth Circuit has stated, "[a] state court decision may be incorrect, yet still not unreasonable, and we will grant relief only if the state court decision is both incorrect *and* unreasonable." *Cole v. Roper*, -- F.3d --, 2010 WL 4366378, at *2 (8th Cir. Nov. 5, 2010).

A writ of habeas corpus may also be available where the state courts' resolution of a prisoner's criminal case is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In other words, habeas relief can be granted if the conviction is based on findings of fact that could not reasonably be derived from the state court evidentiary record. When reviewing a state court decision, however, "a federal court . . . presumes that the state court's factual determinations are correct," and that presumption "may be rebutted only by clear and convincing evidence." *Lee v. Gammon*, 222 F.3d 441, 442 (8th Cir. 2000); *see also* 28 U.S.C. § 2254(e)(1).

Needless to say, a federal district court is not allowed to conduct its own *de novo* review of a state prisoner's constitutional claims. Habeas relief cannot be granted unless the prisoner has identified, and substantiated, a specific error committed by the state courts. Moreover, he must show that the state courts

8

committed the type of error that is actionable under § 2254(d), as that statute has been interpreted by the Supreme Court in *Williams*.

## II. Analysis

### A. Statute of Limitations

The AEDPA has a one-year statute of limitations for habeas corpus petitions that are filed by state prisoners who seek a federal court's review of a state court conviction or sentence. 28 U.S.C. § 2244(d)(1). The one-year period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action.
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(i)(A)-(D) (2000).

The Minnesota Supreme Court affirmed Petitioner's conviction and sentence on May 29, 1997. Judgment was entered July 9, 1997, and became final 90 days later on October 7, 1997. This action was not filed until May 11,

9

2010.  Petitioner does not contest the fact that the statute of limitations for purposes of federal habeas corpus relief expired on October 7, 1997, because the trigger in 28 U.S.C. § 2244(d)(1)(A), the entry of final judgment, applies.

Petitioner argues, however, that the one-year statute of limitations should be equitably tolled in this case because "there were extraordinary circumstances beyond the prisoner's control that made it impossible for the prisoner to file a petition on time." (Doc. No. 2, Mem. in Supp. of Pet. 4.)  Specifically, he argues that he did not receive, in a timely fashion, the October 27, 1993 report prepared by the BCA firearms expert, which stated that the results of the comparison examination of the bullet fragments from the victim's skull and the Petitioner's gun "failed to show an identification." (Doc. No. 1, Attach. 2 at 3.)  Petitioner contends that if he had this report at trial, he could have impeached the BCA firearms examiner's testimony.  The BCA examiner had testified that the testing was "inconclusive," but Petitioner contends that the words "failed to show identification" mean that the BCA's testing actually, and conclusively, demonstrated that there was no match between the bullet fragments in the victim's skull and Petitioner's gun.  Moreover, Petitioner says that an independent forensic scientist he retained in 2007 to study the BCA reports discovered in the BCA notes that the BCA had examined another "similar gun . . . with no further

explanation." (Doc. No. 14, Pet'rs Mem. in Opp'n to the State's Mot. to Dismiss 3.)

Petitioner also contends that he never has had discovery of all the ATF records in this case and that it is at least suspicious that the ATF records that he has been able to obtain in the years after trial have been heavily redacted in response to his FOIA requests.

Petitioner has the burden of demonstrating grounds warranting equitable tolling.  *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).  He must establish that he has been pursuing his rights diligently and that "some extraordinary circumstance stood in his way."  *Kreutzer v. Bowersox*, 231 F.3d 460, 463 (8th Cir. 2000).  The application of equitable tolling must be "guarded and infrequent." *Jihad v. Hvass*, 267 F.3d 803, 806 (8th Cir. 2001).

The problem with Petitioner's equitable-tolling argument is that he fails to show that he acted diligently after the final judgment was entered in 1997, to discover and present his federal constitutional claim.  Although Petitioner is represented by an attorney in this post-conviction action, his explanation of how and when he discovered the "new" evidence (the BCA examiner's report) is confusing and incomplete.  He claims that sometime after 1997—he does not say when—"newly retained counsel"—he does not say who—directed him to request his complete file from the BCA and the ATF.  (Pet. at 2.)  Then, at some

11

undisclosed point in time, the BCA ". . . did make available what Petitioner now believes to be previously undisclosed records related to key and material evidence in this case." (*Id.* at 2-3.) Petitioner makes no claim that he had any difficulty getting his file from the BCA. He does not explain why he did not request the file, or subpoena it, from the BCA before or during the trial in 1995, or why he could not have obtained it shortly after the final judgment in 1997, which was long before he brought his state post-conviction *Brady* claim in 2007. As a result, this Court concludes that Petitioner has not met his burden showing that equitable tolling of the one-year statute of limitations is warranted. In addition, this Court concludes that it is unnecessary at this point to allow Petitioner more time to develop his equitable-tolling claim because even if the one-year statute were tolled and Petitioner could bring his constitutional claim, it would be denied on the merits. The Minnesota Supreme Court thoroughly reviewed the constitutional claim and, as discussed below, reasonably applied the clearly established U.S. Supreme Court precedent of *Brady* to defeat Petitioner's claim.

### B. Reasonable Application of *Brady*

On January 14, 2010, the Minnesota Supreme Court denied Petitioner's constitutional *Brady* claim. Specifically, the Minnesota Supreme Court concluded that the state district court did not abuse its discretion when it dismissed the petition for post-conviction relief without holding an evidentiary hearing because

the allegedly non-disclosed forensic report was not material and, therefore, did not result in a due-process violation under *Brady v. Maryland*, 373 U.S. 83 (1963), and because the report did not contain newly discovered, exculpatory evidence. *Walen v. State*, 777 N.W.2d 213, 217-18 (Minn. 2010). The court, at the outset, noted that the state asserted that the subject BCA report was, in fact, disclosed to Petitioner before his trial in 1995, and, therefore, he knew or should have known about his claims concerning the report at the time of his earlier appeal and post-conviction petition in 1996-1997. *Id.* at 215-16. The court then stated that Petitioner's assertion that the state failed to produce the BCA report before trial was "less than convincing." *Id.* Ultimately, however, the Minnesota Supreme Court decided to address the merits of Petitioner's claim and, thus, assumed for purposes of its analysis that the state failed to produce the BCA report before Petitioner's trial.

The Minnesota Supreme Court set forth the U.S. Supreme Court standards for a *Brady* violation: "(1) The evidence must be favorable to the defendant because it would have been either exculpatory or impeaching; (2) the evidence must have been suppressed by the prosecution, intentionally or otherwise; and (3) the evidence must be material—in other words, the absence of the evidence must have caused prejudice to the defendant." *Id.* at 216. The court then focused in on the *Brady* materiality requirement and analyzed the effect the BCA

13

report would have had on the outcome at trial. Petitioner's argument was that the BCA report actually contained the statement "failed to show identification" while, at trial, the BCA firearms examiner testified that the comparison of the bullet fragments found in the victim and Petitioner's gun was "inconclusive." Petitioner claimed that the outcome would have been different at trial because, faced with the words "failed to show identification," the BCA examiner would have testified that the bullet fragments definitely did not come from Petitioner's gun. Analyzing the records, the testimony at trial, and the affidavit submitted in the post-conviction proceeding, however, the Minnesota Supreme Court concluded that the terms "failed to show an identification" and "inconclusive" were used synonymously by the BCA and that the BCA report "did not therefore contain any additional impeachment evidence that [Petitioner] could have used at trial." *Id.* at 217.

The Minnesota Supreme Court also concluded that there was substantial evidence aside from the testimony of the two firearms examiners on which a jury could have based its guilty verdict. It noted that the state presented evidence of a romantic relationship between Petitioner and the victim's wife, Michelle Wallace, and that Michelle Wallace initially failed to tell police about this relationship. There was evidence that Michelle Wallace was the sole beneficiary of the victim's $120,000 life-insurance policy. And Michelle Wallace and

14

Petitioner were engaged to be married and began looking for a home to purchase shortly after the victim's murder. Additionally, the state presented evidence that Petitioner could not say for certain where he was at the time of the murder, had purchased a gun that used ammunition similar to that used in the murder a few days before the murder, and then sold the gun hours after the murder. The Minnesota Supreme Court concluded that the non-disclosure of the BCA report did not represent a *Brady* violation because the BCA report was not material, and this lack of materiality also doomed Petitioner's argument that he was entitled to a new trial on the basis of newly discovered evidence. *Id.* at 217-18.

Applying the deferential AEDPA standard required on habeas review, this Court concludes that the Minnesota Supreme Court's adjudication of Petitioner's constitutional claim has not resulted "in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Minnesota Supreme Court correctly and reasonably applied the *Brady* standards in this case and therefore Petitioner's claim should fail.

Further, Petitioner's motion to compel discovery should also be denied. Petitioner demands copies of all forensic testing done by ATF and other forensic laboratories and seeks to have the gun and bullet fragments previously tested by

ATF and BCA before trial tested again, now some 15 years later. Rule 6(a) of the Rules Governing Section 2254 cases in the United States District Courts provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." Petitioner has failed to meet the good-cause requirement because he has not shown that this discovery will enable him to demonstrate that he is entitled to relief. He has presented no more than the unfounded suspicion that something will turn up in the ATF documents to help his case or that new testing might support his claim. The discovery should therefore be denied.

## RECOMMENDATION

Based on the above, and on the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Respondent's Motion to Dismiss Petition for Writ of Habeas Corpus (Doc. No. 8), be **GRANTED**;

2. Petitioner's Motion to Compel Discovery (Doc. No. 3), be **DENIED**;

3. Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. No. 1), be **DENIED**; and

4. This action be **DISMISSED WITH PREJUDICE**.

Date: November 29, 2010

*s/ Jeffrey J. Keyes*
JEFFREY J. KEYES
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **December 13, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within **fourteen days** after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.